# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:13-CR-00264-FDW-DSC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| HECTOR MANUEL CASTANEDA GASTELO, | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Defendant's "Motion to Suppress Evidence," Doc. 72, filed on February 26, 2014. The Government's "Response to Defendant's Motion to Suppress Evidence," Doc. 81, was filed on March 10, 2014. On March 27, 2014, Defendant filed his "Supplement to Motion to Suppress and Memorandum of Law in Support of Motion to Suppress Evidence," Doc. 94. The Government filed its "Response to Defendant's Supplemental Motion to Suppress Evidence," Doc. 98, on April 6, 2014. The undersigned conducted an evidentiary hearing on April 8, 2014. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the record and following an evidentiary hearing, the undersigned respectfully recommends that Defendant's Motion to Suppress and Supplemental Motion to Suppress be <u>denied</u>, as discussed below.

## I. FACTUAL BACKGROUND AND FINDINGS

Defendant is charged in a Bill of Indictment with conspiracy to distribute and possess

with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 and money laundering conspiracy in violation 18 U.S.C. § 1956(h).

Defendant contends that federal agents lacked probable cause to make a warrantless arrest following the controlled delivery of a suitcase containing nine pounds of heroin. He also contends that he does not recall being advised of or waiving his Miranda rights and that his post-arrest statements should be suppressed.

On April 8, 2014, the undersigned conducted an evidentiary hearing. The Court heard testimony from Agent Dustin Harmon of the Drug Enforcement Administration ("DEA").

During 2012, Agent Harmon commenced an investigation of a drug trafficking organization ("DTO") that was importing heroin into the Charlotte area. Agent Harmon has been a DEA agent for eleven years, and has four years of prior experience with local law enforcement agencies in Virginia. His investigation began with information provided by a confidential source. During the course of the investigation, Agent Harmon learned that the head of the DTO in the Charlotte area was known as "Frankie." "Frankie" was later identified as Defendant Hector Manuel Castaneda Gastelo.

A confidential source introduced Agent Harmon to the Defendant on January 28, 2013. Agent Harmon posed as a buyer who was seeking a new source of supply for heroin. Agent Harmon represented that he had connections to biker gangs in Virginia and would be distributing heroin there. Defendant told Agent Harmon that he imported heroin from Mexico and could supply as much as he needed. Agent Harmon had several telephone conversations with Defendant following their initial meeting. Harmon and Defendant agreed to meet again on February 6. Defendant was to provide Harmon with a one ounce sample of heroin.

Defendant and another individual arrived at the meeting place in a beige Acura with registration BEV-6777. Agents had seen the Acura during previous surveillance, and determined that it was registered to the Defendant. Defendant directed Agent Harmon to follow him to another location. This raised security concerns for Agent Harmon and he declined. Defendant said that he understood and they parted company.

During late March, DEA agents learned through their investigation that a female courier for the DTO would be flying from Los Angeles to Charlotte with a shipment of heroin. The courier was to arrive on March 29 and stay at a Comfort Suites Hotel on Mulberry Church Road in Charlotte. Agents were unable to locate the suspected courier.

DEA agents later learned that a female courier would be flying from Los Angeles to Charlotte with a shipment of heroin concealed in a suitcase on April 12. Based upon the previous information, agents set up surveillance at the Comfort Suites. Agents observed two Hispanic males arrive at the hotel empty handed and go inside. They later exited with a large rolling suitcase and placed it in the trunk of their vehicle. Charlotte Mecklenburg Police subsequently initiated a traffic stop and obtained consent to search from the driver, identified as Marcelino Rivera Vorquez. Officers removed the suitcase and discovered approximately eight pounds of heroin concealed in a false bottom.

Finally, DEA agents learned that a female courier would be flying from Los Angeles to Charlotte with a shipment of heroin on April 26. On this occasion, agents learned more information about the suspected courier and which flight she would be taking. Agents set up surveillance at the baggage claim area and observed the suspected courier retrieve her suitcase. Agents approached her and identified themselves. The suspected courier-identified as "Ms. Perez"-agreed to speak with agents and gave consent to search the suitcase. Agents located

approximately eight pounds of heroin hidden in a false bottom of the suitcase. Perez agreed to cooperate and telephoned the individual she was supposed to meet. This individual told her that the transfer would take place the next morning. Agents repackaged the suitcase and arranged a controlled delivery to occur at the Comfort Suites with the cooperation of Perez. DEA agents remained at the hotel with Perez and the suitcase throughout the night.

At 10:00 a.m. the following morning, Defendant arrived at the hotel driving the beige Acura. He was accompanied by an individual later identified as Carlos Lopez Hernandez. Agents observed the two men enter the hotel. Defendant was carrying a small gift bag. Approximately fifteen minutes later, agents observed the two men leave the hotel. Defendant was rolling the suitcase that agents previously took from Perez. Defendant and Lopez were placed under arrest.

Defendant was placed in an unmarked vehicle driven by Task Force Officer Cameron Miller. He was in the front passenger seat. Agent Harmon entered the vehicle and sat in the rear passenger area behind Officer Miller. Harmon began to speak with Defendant at 10:48 a.m. Harmon had previously spoken with Defendant in English. Defendant spoke fluent English. Harmon asked if Defendant would prefer to speak in English or Spanish. Defendant answered that English would be fine. Harmon verbally advised Defendant of his Miranda rights by reading them from a small card identified as form "DEA 13A". The contents of the card are :

> Oral Warnings to [B]e Given to a Subject Prior to Interrogation
>
> Before we ask you any questions, you must understand:
>
> -You have the right to remain silent.
>
> -Anything you say can be used against you in court.
>
> -You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.

-If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

Do you understand?

Are you willing to answer some questions?

DEA – 13A (6/84)[1]

Defendant acknowledged that he understood his rights. Harmon further advised him that he could stop the interview if he became uncomfortable. Defendant was relaxed and cooperative. He was not under the influence of any impairing substance. He suggested to Harmon that agents may want to proceed to the house where the heroin was supposed to be delivered. He also told Harmon that he knew a "good amount" of heroin was inside the suitcase. Defendant stated that the heroin was imported from Mexico by way of Los Angeles. He said that approximately five ounces had been arriving in Charlotte over the last six months.

During this time, Defendant also executed forms consenting to the search of a residence on Tiger Lily Lane and a 2006 Saab automobile. Charlotte Mecklenburg officers then drove Defendant to a church parking lot where they waited while Agent Harmon initiated a "knock and talk" at a residence believed to be used by the DTO. Defendant was not questioned during this period. He was placed in handcuffs during some of the time he was being transported. Defendant was then driven to the Pineville Police department by Harmon and Officer Miller. At various times, Harmon offered Defendant water and food from his lunch box. He was also allowed to step outside the vehicle to urinate.

Upon arrival at the Pineville Police Department, Defendant was briefly placed in a holding cell with a bathroom. He was then moved to an interview room where Harmon reminded him of his Miranda rights. Defendant traced his involvement with the DTO beginning as a driver

---

[1] Printed on the reverse side of the card are the same questions in Spanish with the title "To Be Used By Spanish Speaking Agents Only."

and later assuming a supervisory role where he dispatched "runners." He described Charlotte as his "work city." He also admitted placing vehicles in his name for use by other members of the DTO. Harmon concluded the interview at approximately 5:00 p.m. Defendant did not request counsel or ask to terminate the interview at any time.

## II. ANALYSIS

### A. Warrantless Arrest of Defendant

"It is well-settled under Fourth Amendment jurisprudence that a police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause to believe that the individual has committed, is committing, or is about to commit a crime." United States v. Dickey–Bey, 393 F.3d 449, 453–54 (4th Cir.2004) (citations omitted). Probable cause to justify an arrest exists where "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)(listing cases); see also Dickey–Bey, 393 F.3d at 453. "[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 230-32 (1983). Probable cause is an objective test which requires the court to examine the facts within the knowledge of the arresting officers to determine whether those facts establish a probability on which a reasonable and prudent person would act. United States v. Gray, 137 F.3d 765, 770 (4th Cir. 1998). Courts give deference to the experience of the law enforcement officers who are at the scene of the arrest. See Ornelas v. United States, 517 U.S. 690, 699 (1996). The Supreme Court has recognized that trained law enforcement officers may draw inferences and make deductions that "might well elude an

untrained person." United States v. Cortez, 449 U.S. 411, 418 (1981); see also United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008).

The facts here are comparable to those in United States v. Dickey-Bey, 393 F.3d 449 (4th Cir. 2004) where the Fourth Circuit found that the totality of the circumstances justified a warrantless arrest of the defendant. In Dickey-Bey, law enforcement officers in Los Angeles notified their counterparts in Maryland that three packages would be arriving in Baltimore from Culver City, California. The packages were believed to contain cocaine and they were addressed to UPS and Mail Boxes Etc. stores in the Baltimore area. Officers with the Maryland State Police Package Drug Interdiction Unit intercepted the three packages as well as a fourth. Officers found cocaine in each package. The officers resealed the packages and transported them to the addressee mailboxes for pickup. The defendant was arrested after he picked up one of the packages at a Mail Boxes, Etc. store. Police knew that this package contained two kilograms of cocaine. The Fourth Circuit held, "When 'viewed from the standpoint of an objectively reasonable police officer,' and 'as understood by those versed in the field of law enforcement,' the circumstances presented to the officers in this case supported their reasonable belief that Dickey-Bey was involved in a conspiracy for the distribution of cocaine." Id. at 456 (quotations omitted).

The undersigned finds that the agents here clearly had probable cause to believe that Defendant was committing a felony drug offense. Defendant was known to be the leader of a local DTO. An ongoing investigation had revealed that the DTO was utilizing couriers travelling from Los Angeles to Charlotte with large amounts of heroin. This DTO had placed the courier at the same hotel on previous occasions. Agent Harmon recognized Defendant and his car when he

arrived at the hotel on April 27, 2013.  When Defendant walked out of the hotel, he was rolling the suitcase that agents knew contained nine pounds of heroin.

Based upon the totality of the circumstances, the agents had probable cause to believe that the defendant had committed, was committing, and was going to commit a crime.  Consequently, the undersigned respectfully recommends that Defendant's Motion to Suppress with regard to his warrantless arrest be <u>denied</u>.

**B.** **<u>Waiver of Miranda Rights</u>**

The Fifth Amendment guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. This privilege against self-incrimination is protected by procedures that must be followed during custodial interrogations. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).  Law enforcement officers must warn a suspect in custody and obtain a waiver of his or her rights before proceeding with any interrogation. <u>See U.S. v. Mashburn</u>, 406 F.3d 303, 306 (4th Cir. 2005).

A defendant may waive his <u>Miranda</u> rights if he does so "knowingly and voluntarily." <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979).  A two-step inquiry is necessary to determine whether a defendant effectively waived his rights under Miranda.  First, the relinquishment of the right "must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception." <u>United States v. Cristobal</u>, 293 F.3d 134, 139-40 (4th Cir. 2002) (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).  Second, the waiver

> must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Id. at 140.

The undersigned finds that defendant's waiver was knowing and voluntary. After the defendant was arrested, he was taken to a post office parking lot where he was interviewed by Agent Harmon. Harmon advised Defendant of his Miranda rights by reading from his form "DEA 13A" which he kept in his wallet. Defendant responded that he understood his rights and agreed to answer questions, thereby waiving his right against self-incrimination. After Defendant was taken to the Pineville Police Department, he was again asked if he understood his rights. He agreed to continue the interview, further evidencing a knowing and voluntary waiver of his Miranda rights.

To be valid, the waiver "need not be explicit, but may be inferred from all the circumstances." United States v. Hicks, 748 F.2d 854, 859 (4th Cir. 1984); see also United States v. Cardwell, 433 F.3d 378, 389-90 (4th Cir. 2005) ("implied waiver" by defendant's willingness to answer questions after being advised of rights). Here, Defendant willingly responded to questions in a conversational manner.

Defendant's statements were voluntary. "In assessing voluntariness, we ask whether the defendant's statement was 'the product of a free and deliberate choice [or the result of] intimidation, coercion, or deception.'" Cardwell, 433 F.3d at 389 (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). Relevant inquires may include the length of the interview; any promises given or threats made by law enforcement; and the lack of food, water, sleep, or a bathroom. United States v. Van Metre, 150 F.3d 339, 348 (4th Cir. 1998) (Court held defendant's statements were voluntary despite a fifty-five hour delay between arrest and arraignment because the defendant was not harmed, threatened, held in seclusion, or deprived of food and rest). Other considerations may include an assessment of the defendant's personal

characteristics, such as age, education, intelligence, and mental state. Arizona v. Fulminante, 499 U.S. 279, 286 n. 2.

Defendant was coherent during all portions of the interview here. He was able to understand and answer questions. He was not impaired in any way. Defendant was not threatened, intimidated, or coerced in any way by Agent Harmon or Officer Miller. Defendant never asked to stop the interview. He never refused to answer any questions. He never asked for an attorney. He was offered food and water on more than one occasion. He was allowed to use the bathroom. Defendant speaks Spanish and English was comfortable speaking in English. He told Agent Harmon that he was recruited to work for the DTO because he speaks English well.

Defendant states in his Motion to Suppress that he was "questioned for several hours." While Defendant was with the agents from approximately 10:48 a.m. until approximately 5:00 p.m., the questioning did not continue throughout that time. After initially talking with Defendant in the Post Office parking lot, there was a break when Agent Harmon and Officer Miller went to a house to conduct a "knock and talk." After the "knock and talk", they transported Defendant to the Pineville Police Department. Defendant was also allowed to use the bathroom there and was again asked if he understood his rights and wanted to continue the interview.

As the Fourth Circuit held in United States v. Ayesh, questioning for less than six hours does not offend the constitution. 702 F.3d 162, 169 (4th Cir. 2012). In Ayesh, the defendant was in FBI custody from 12:34 p.m. until approximately 6:10 p.m. However, that time period included transportation from the airport to the FBI office as well as bathroom breaks. Here Defendant was in custody from approximately 10:48 a.m. until 5:00 p.m. This period also included transportation and breaks.

While Defendant did not execute a written waiver of his rights, one is not required. As the United States Supreme Court held in North Carolina v. Butler,

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case...the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

441 U.S. at 373.

Based upon the totality of the circumstances, the undersigned finds Defendant's waiver of his Miranda rights was knowing and voluntary. Consequently, the undersigned respectfully recommends that Defendant's Motion to Suppress be denied.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the Defendant's "Motion To Suppress Evidence," Doc. 72, and "Supplement to Motion to Suppress and Memorandum of Law in Support of Motion to Suppress Evidence," Doc. 94, be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147

(1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED.**

Signed: April 11, 2014

David S. Cayer
United States Magistrate Judge